# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| 1SOURCE HOLDINGS, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:19-cv-02639 |
| LAURITA JACKSON, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Before the Court is Defendant Laurita Jackson's December 18, 2019 Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion to Dismiss"). (ECF No. 16.) Plaintiff 1Source Holdings, LLC ("1Source") responded on January 15, 2020. (ECF No. 17.) Jackson has not filed a reply.

For the following reasons, the Motion to Dismiss is DENIED.

**I.   Background**

For purposes of the Motion to Dismiss, the facts are taken from the Complaint.

This is a dispute about the rights to membership interests in a limited liability company ("LLC"). 3Bs Company, LLC ("3Bs") is a Tennessee company that distributes office supplies, janitorial products, and furniture. (ECF No. 1 ¶¶ 7-8.) 3Bs has Class A and Class B membership interests. (Id. ¶ 13.)

Jackson and George "Hank" Brown, III hold 3Bs's Class A membership interests. (Id.) 1Source holds 3Bs's Class B membership interest, pursuant to a July 2013 Purchase Agreement of Membership (the "Purchase Agreement") in which 1Source purchased the Class B membership interests of prior 3Bs members. (Id. ¶ 9; see also Purchase Agreement, ECF No. 1-1.) The interests of 3Bs and the membership interests of 3Bs's members are governed by a July 2013 Amended Operating Agreement (the "Operating Agreement"). (ECF No. 1 ¶ 11; see also Operating Agreement, ECF No. 1-2.) The Operating Agreement names Jackson as 3Bs's President and CEO. (ECF No. 1 ¶ 14.)

Article 8.3 of the Operating Agreement allows, in certain situations, for 3Bs's Class B members to purchase the membership interests of 3Bs's Class A members. In relevant part, Article 8.3 provides:

> In the event of a Class A Member's (a "Withdrawing Member") death, Permanent Disability (as defined below) or termination of employment with the Company for any reason, the Class B Members shall have the right and option, exercisable by written notice to such Withdrawing Member (or his personal representative in the event of death) within two years of such event, to purchase all of the Withdrawing Member's interest for the current book value of the Withdrawing Member's Capital Account as of the end of the month preceding the date on which the withdrawal event occurred.

(ECF No. 1-2 at 13.) After the Operating Agreement was executed, Jackson was employed by 3Bs as Managing Member and CEO. (ECF No. 1 ¶ 16.)

On August 16, 2019, Jackson resigned as 3Bs's Managing Member and CEO. (Id. ¶ 17.) On August 19, 2019, 1Source informed Jackson in a letter that it was exercising its right under Article 8.3 of the Operating Agreement to purchase Jackson's Class A membership interest in 3Bs. (Id. ¶ 19.) In its letter to Jackson, 1Source stated that, due to substantial operating losses 3Bs had incurred, the book value of Jackson's 3Bs capital account was negative and the purchase price for 1Source's purchase of Jackson's membership interest was $0.00. (Id. ¶ 20.)

On August 23, 2019, Jackson asserted in a response letter that 1Source did not have the right to purchase her membership interest in 3Bs. (Id. ¶ 23.) In her response letter, Jackson said that "1Source never paid for its [Class B] membership interest as required by the Purchase Agreement, and has been in default for over four (4) years" and that, "[a]s a consequence of 1Source's failure to pay and being in default, the [] Operating Agreement you referenced is of no effect" and "there is no factual or legal basis to purchase my membership interest . . . ." (ECF No. 1-7 at 1; see also Answer, ECF No. 9 ¶ 32 ("Defendant admits that it is her position that Plaintiff has no right to purchase her membership interest, has defaulted under

3

the Purchase Agreement, and has no rights pursuant to the . . . Operating Agreement.").) Jackson maintains that 1Source owes in excess of $130,000 for its Class B membership interest. (ECF No. 1 ¶ 24.)

On September 19, 2019, 1Source filed the Complaint. (ECF No. 1.) 1Source seeks a declaratory judgment that the Operating Agreement is in full force and effect and that 1Source has the right to purchase Jackson's membership interest for $0.00. (Id. ¶¶ 25-33.) 1Source also seeks a temporary injunction restraining Jackson from interfering with the management and operation of 3Bs and a mandatory injunction requiring Jackson to transfer her membership interest in 3Bs to 1Source. (Id. ¶¶ 34-38.)

On December 18, 2019, Jackson filed the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), asserting that the Court lacks subject matter jurisdiction over this case. (ECF No. 16.)

## II. Jurisdiction

1Source is an LLC whose members are resident citizens of Minnesota. (ECF No. 1 ¶ 1.) Jackson is a resident citizen of Tennessee. (Id. ¶ 2.) The parties are diverse, but they dispute whether the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).

**III. Standard of Review**

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. O'Bryan v. Holy See, 556 F.3d 361, 375 (6th Cir. 2009). A facial attack asserts that, even if all of the allegations in the complaint are true, there is an insufficient basis for subject matter jurisdiction. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). When reviewing a facial attack, a district court takes the allegations of the complaint as true. Id. A factual attack "controvert[s] the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials . . . in support of that position." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

In determining whether a plaintiff's claim for declaratory or injunctive relief meets the amount in controversy requirement, "the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977). In this Circuit, "the amount in controversy is the value of the right that the plaintiff seeks to protect or the extent of the injury to be prevented." McIntire v. Ford Motor Co., 142 F. Supp. 2d 911, 920 (S.D. Ohio 2001) (citing Goldsmith v. Sutherland, 426 F.2d 1395, 1398 (6th Cir. 1970), and Lodal, Inc. v. Home Ins. Co. of Ill., No. 95-2187,

5

1998 WL 393766, at *3 (6th Cir. June 12, 1998)). "It is generally agreed in this circuit that the amount in controversy should be determined 'from the perspective of the plaintiff . . . .'" Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro, 129 F. App'x 194, 195-96 (6th Cir. 2005) (quoting Buckeye Recyclers v. CHEP USA, 228 F. Supp. 2d 818, 821 (S.D. Ohio 2002)).

Courts accept a plaintiff's claim that the amount in controversy requirement is satisfied "unless 'it is apparent, to a legal certainty,'" that the object of the litigation is worth less than the plaintiff claims. Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 973 (6th Cir. 2009) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "It is well-settled that 'if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith.'" Schultz v. Gen. R.V. Ctr., 512 F.3d 754, 756 (6th Cir. 2008) (quoting Gafford v. Gen. Elec. Co., 997 F.2d 150, 157 (6th Cir. 1993)).

**IV. Analysis**

Jackson moves to dismiss the Complaint. (ECF No. 16.) She raises a facial attack on subject matter jurisdiction. (Id. at 1.) Jackson asserts that "[t]he Complaint . . . facially

6

demonstrates the amount in controversy does not exceed the sum or value of $75,000." (Id.) She argues that, because the Complaint "seeks a declaration by this Court" that 1Source "has the right to purchase Defendant's membership interest in [3Bs] for the sum of $0.00," the amount in controversy is less than the $75,000 threshold for diversity jurisdiction. (Id. at 4.)

In response, 1Source argues that, although it seeks a declaration that it has the right to purchase Jackson's membership interest for $0.00, the value of the object of the litigation is more than $75,000. (See ECF No. 17 at 2-5.) 1Source's argument is well-taken. A central issue in the case is whether 1Source is in default under the Purchase Agreement and, if so, whether it may enforce Article 8.3 of the Operating Agreement and purchase Jackson's membership interest. Jackson asserts that 1Source owes $130,000 under the Purchase Agreement and, as a result of that alleged default, "does not have the right or authority to purchase [her] membership interest in 3Bs." (ECF No. 1-7 at 1; see also ECF No. 9 ¶¶ 24, 32.) 1Source asserts that the Operating Agreement is enforceable "notwithstanding Jackson's contention that 1Source is indebted to Jackson or other former members for $130,000," and that 1Source need not pay the $130,000, or anything at all, before obtaining Jackson's membership interest in 3Bs. (ECF No. 17 at 4.)

1Source seeks a declaration that it has the legal right to purchase Jackson's membership interest for $0.00 and a mandatory injunction requiring Jackson to transfer the membership interest. (ECF No. 1 ¶¶ 25-38.) The "extent of the injury to be prevented" is, from 1Source's perspective, $130,000, the amount it asserts it need not pay before obtaining Jackson's membership interest. See Goldsmith, 426 F.2d at 1398 ("[I]n injunction actions, the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented."); see also Freeland v. Liberty Mut. Fire Ins. Co., 632 F.3d 250, 253 (6th Cir. 2011) ("'[W]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'") (quoting Lodal, 1998 WL 393766, at *2). Jackson cites no authority to the contrary.

There is no evidence of bad faith on 1Source's part, and it is not apparent "to a legal certainty that the [] claim [is] really for less than the amount-in-controversy requirement." Schultz, 512 F.3d at 756. The Motion to Dismiss is DENIED.

**V. Conclusion**

For the foregoing reasons, the Motion to Dismiss is DENIED.

8

So ordered this 7th day of April, 2020.

                                      /s/ *Samuel H. Mays, Jr.*
                                      Samuel H. Mays, Jr.
                                      UNITED STATES DISTRICT JUDGE